# United States Court of Appeals
## For the First Circuit

No. 14-1588

UNITED STATES OF AMERICA,

Appellee,

v.

LUIS A. GARCÍA-PAGÁN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Barron, Circuit Judges.

James B. Krasnoo, with whom Benjamin L. Falkner, and Krasnoo Klehm LLP, were on brief, for appellant.
Francisco A. Besosa-Martínez, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

October 20, 2015

**BARRON**, <u>Circuit Judge</u>.  Following a brutal home invasion in Puerto Rico, Luis A. García-Pagán was convicted, after a jury trial, of carjacking and of carrying a firearm during and in relation to a crime of violence.  The District Court sentenced García to 420 months' imprisonment.  García now challenges his conviction and sentence.  We affirm.

**I.**

The following evidence of the crime was presented at trial.  At approximately 1:40 a.m. on February 4, 2013, three men broke into the home of Dr. Noel De León-Roig in Puerto Nuevo, Puerto Rico.  All three intruders wore masks and carried firearms.  De León awoke to one of the men straddling his head and hitting him in the face.  When the lights in the room came on, De León saw his twelve-year-old son with the other two assailants.  One was pushing a revolver into the boy's mouth.  The other held a gun to the back of the boy's head.  At that point, one of the assailants said, "Doctor, lower your eyes.  Lower your arms.  This is a robbery, you son of a bitch."

Over the next hour and a half, the three assailants terrorized De León and his son.  They took tens of thousands of dollars from De León's safe, along with iPods, computers, watches, and a plasma TV.  The intruders tied up the doctor and his son, hit them with guns, and threatened to execute them.  Around 3:00

a.m., the assailants left in De León's car, and De León called the police.

For a stretch of time during the invasion, the robbers did remove their masks in order to eat pizza and drink soda that they had found in De León's kitchen. And so De León saw their faces. De León later identified García as one of the assailants from a group of nine people in a photo array within one minute of being shown the photographs. De León made that identification very soon after the break-in, at approximately 9:00 a.m. the same day. De León identified García again in the courtroom at trial. De León described García as "the focused one" of the three assailants, and he described one of the other assailants, Ricardo Urbina-Robles, as the leader of the group.

García argued at trial that he had been misidentified. He introduced the alibi testimony of his wife, his mother, and a friend. Together, these three people testified that García saw a film with his family on the evening of February 3, and then, sometime in the early hours of February 4, returned with his family to the housing complex where García lived. García's wife testified that, after their return from the film, García was in bed the entire night.

After the close of the evidence and before closing arguments, defense counsel requested a continuance in order to move for a writ of habeas corpus ad testificandum for Urbina, to

enable Urbina, who was then incarcerated and awaiting sentencing following his guilty plea for his involvement in this same crime, to be present and testify in person on García's behalf.[1]  See 28 U.S.C. § 2241(c)(5) (providing for such a writ).  The District Court denied the request.

The jury returned convictions as to both counts with which García had been charged: carjacking, 18 U.S.C. § 2119(1), and carrying a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii).  The District Court sentenced García to 420 months in prison -- a sentence five years longer than the sentence the same judge imposed on Urbina.  García appeals.

## II.

García challenges his conviction on the basis of the District Court's supposed error in denying defense counsel's

---

[1] Defense counsel introduced the issue earlier, after the District Court denied the defense's Rule 29 motion.  But counsel did not request a continuance at that time. Rather, counsel simply informed the District Court that she had served a subpoena to obtain Urbina's presence, and that she had been instructed to do so by the United States Marshals.  The District Court instructed defense counsel that this was the wrong procedure, and that she should have filed a request for a writ of habeas corpus ad testificandum.  Then, the day before closing arguments, the District Court raised the issue on its own. The District Court told defense counsel that it had spoken with the marshals and that defense counsel had been wrong as to which officer had told her to file a subpoena.  Defense counsel did not request a continuance at that moment either.

request for a continuance to file a motion for a writ of habeas corpus ad testificandum for Urbina. García argues that this denial deprived him of his Sixth Amendment right to compel the attendance and testimony of a favorable witness.[2]

We review the District Court's refusal to grant a continuance for an abuse of discretion, even if the movant contends that the denial implicated his Sixth Amendment rights. United States v. DeCologero, 530 F.3d 36, 74 (1st Cir. 2008). And where, as here, the defendant requests a continuance after the parties have rested, the defendant "must . . . show[] that the proffered evidence was of such importance to the achievement of a just result that the need for admitting it overrides the presumption favoring enforcement of the [court's] usual trial procedures." Blaikie v. Callahan, 691 F.2d 64, 67-68 (1st Cir. 1982). But García has not made that showing.

The District Court had good reason to decide that a continuance would be unnecessarily disruptive to the trial proceedings, especially given the late date at which the request for more time was made. Even assuming García made a proffer that Urbina would provide helpful testimony (a premise the government disputes), the District Court found -- and the record shows --

---

[2] The Sixth Amendment guarantees a criminal defendant the right "to have compulsory process for obtaining witnesses in his favor." U.S. Const. Amend. VI.

that it was not at all clear that Urbina would waive his Fifth Amendment right and testify if compelled to appear.

If Urbina did testify, the District Court explained, he would have to identify his accomplices and he "doesn't want to be called a squealer." And the District Court also noted that it had spoken to Urbina's attorney and that the attorney had "advised his client as to what problems he could get into, he has other matters pending and his client said I don't want to go through a possibility of getting further charges or perjury or obstruction of justice or whatever and that his advice to his client, Mr. Urbina, was that he would not testify."

Moreover, Urbina's testimony would have been up against the testimony of the victim, De León, who testified that he was with the assailants for approximately an hour and a half and that he saw the assailants with their masks off, and who identified García within a minute of seeing a photograph lineup. Thus, given the very late stage at which García's counsel requested a continuance, the District Court's decision to follow its usual trial procedures was not an abuse of discretion, notwithstanding García's Sixth Amendment right to compulsory process. See Blaikie, 691 F.2d at 67-68 (concluding that the district court's refusal to reopen trial to permit an expert witness to testify was not an abuse of discretion where the proposed witness's testimony was of limited value to the defendant's case); see also DeCologero, 530

F.3d at 74-75 (finding no abuse of discretion where the district court refused a request, two days before the prosecution rested, that the court either provide funds to expedite a witness's transport or grant a continuance until the witness's presence could be secured where there was no good reason for the delay, and where the "proffered testimony of [the witness] was tangential and potentially cumulative"); Watkins v. Callahan, 724 F.2d 1038, 1043-44 (1st Cir. 1984) (holding that the district court did not abuse its "discretion in declining to delay the trial for three months to await a witness who in all likelihood would [exercise his Fifth Amendment privilege and] refuse to testify").

**III**.

García also contends that his prison sentence is procedurally and substantively unreasonable because it is five years longer than Urbina's sentence, and because the District Court did not explain the reason for that disparity. The parties agree that we should review García's sentence for an abuse of discretion rather than for plain error, and we proceed on this same understanding, as García's contentions fail under even that more forgiving standard.

We begin with García's argument that his sentence of 420 months' imprisonment is procedurally unreasonable because the District Court failed to explain why that sentence is five years longer than Urbina's sentence of 360 months' imprisonment. The

problem for García is that the District Court did offer an explanation for this difference.

In response to García's motion to amend his sentence, in which García raised only the disparity argument, the District Court entered an electronic docket entry denying the motion and referring García to our decision in United States v. Ayala-Vázquez, 751 F.3d 1 (1st Cir. 2014). In Ayala, we held that a defendant's life sentence, though longer than the sentences received by co-conspirators that the defendant claimed were more culpable than he, was not unreasonable because the defendant was not similarly situated to his co-conspirators in a crucial respect: the defendant had gone to trial, while his co-conspirators had pleaded guilty. Id. at 33-34. Thus, in citing to Ayala, the District Court was clearly relying on this same distinction between the defendant, García, who did not plead guilty, and his co-conspirator, Urbina, who did. And we have relied on this very distinction in cases involving similar disparities in sentencing lengths to the one in this case. See United States v. Alejandro-Montañez, 778 F.3d 352, 357, 360-61 (1st Cir. 2015) ("[T]he district court did supply a sufficient reason for the [more than five-year] disparity between Defendants and other conspirators: namely, the other conspirators pled guilty before trial."). So while it would have been preferable for the District Court to state its reasons for imposing the harsher sentence more fully, those reasons may be inferred

from the record nonetheless.  Cf. United States v. Fernández-Cabrera, 625 F.3d 48 (1st Cir. 2010) ("Even silence is not necessarily fatal; a court's reasoning [for imposing a particular sentence] can often be inferred by comparing what was argued by the parties . . . and what the judge did." (quoting United States v. Turbides-Leonardo, 468 F.3d 34, 41 (1st Cir. 2006))).

García also argues that the difference between his and Urbina's sentences renders his sentence substantively unreasonable.  But, in light of Urbina's guilty plea, our precedent forecloses such an argument in this case.  See Alejandro-Montañez, 778 F.3d at 360-61; see also Ayala-Vázquez, 751 F.3d at 34 ("[B]ecause the coconspirators who received lesser sentences had entered guilty pleas whereas Cruz stood trial, the district judge was not required to conform Cruz's sentence to theirs because those individuals were not similarly situated to him."); United States v. Navedo-Concepción, 450 F.3d 54, 60 (1st Cir. 2006) ("The district judge was not required to reduce Navedo's sentence simply because he -- unlike the other defendants -- chose to go to trial.").  A defendant who pleads guilty "demonstrates by his plea that he is ready and willing to admit his crime and to enter the correctional system in a frame of mind that affords hope for success in rehabilitation over a shorter period of time than might otherwise be necessary."  Brady v. United States, 397 U.S. 742, 753 (1970).  But the same cannot be said of a defendant who, like

- 9 -

García, never accepts responsibility for the crime for which he has been convicted. Alabama v. Smith, 490 U.S. 794, 801 (1989) ("[A]fter trial, the factors that may have indicated leniency as a consideration for the guilty plea are no longer present."). For these reasons, García's sentence is not substantively unreasonable. See United States v. Pol-Flores, 644 F.3d 1, 4-5 (1st Cir. 2011) ("[T]he linchpin of a substantively reasonable sentence is a plausible sentencing rationale and a defensible result." (brackets omitted)).

## IV.

García also challenges both his conviction and his sentence on ineffective assistance of counsel grounds. He contends that counsel was ineffective during trial in not timely filing a motion for a writ of habeas corpus ad testificandum to obtain Urbina's presence and testimony. Second, he argues that counsel was ineffective at sentencing in not making various arguments on his behalf.

We have held "'with a regularity bordering on the monotonous' that ineffective assistance of counsel claims, which require a showing of deficient attorney performance and prejudice to the defendant, 'must originally be presented to, and acted upon by, the trial court.'" United States v. Rodríguez, 675 F.3d 48, 55 (1st Cir. 2012) (quoting United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993)). "This is because an appellate court usually

is ill-equipped to handle the fact-specific inquiry that such claims often require." United States v. Ofray-Campos, 534 F.3d 1, 34 (1st Cir. 2008). "In addition, the insights of the trier, who has seen and heard the witnesses at first hand and watched the dynamics of the trial unfold, are often of great assistance." United States v. Moran, 393 F.3d 1, 10 (1st Cir. 2004). Thus, our practice is to dismiss ineffective assistance claims on direct appeal without prejudice to their renewal in a habeas petition brought pursuant to 28 U.S.C. § 2255. See United States v. Delgado-Marrero, 744 F.3d 167, 197 n.31 (1st Cir. 2014).

We deviate from this practice "only when . . . scrutiny of the factual record is unnecessary because the attorney's ineffectiveness is manifestly apparent from the record," id. (quoting United States v. Neto, 659 F.3d 194, 203 (1st Cir. 2011)), which is not the case here. In considering a § 2255 petition, a district court will certainly be in a better position to evaluate in the first instance whether any prejudice resulted from counsel's not filing in a timely fashion a writ for habeas corpus ad testificandum. And, too, the district court will be better positioned than we to develop any facts that may bear on whether counsel was acting strategically -- rather than ineffectively -- in not making other arguments for leniency at sentencing in a case involving such egregious criminal conduct. We therefore follow

our usual practice and dismiss García's two ineffective assistance claims without prejudice to their renewal on collateral review.

**V.**

For the foregoing reasons, García's conviction and sentence are **affirmed.** García's two claims of ineffective assistance of counsel are **dismissed without prejudice**.


**- Concurring Opinion Follows -**

**TORRUELLA, Circuit Judge, concurring.** I join the court's opinion because our precedent requires us to accept that the disparate sentence García received was not procedurally or substantively unreasonable in light of the fact that García did not plead guilty and his co-conspirator, Urbina, did. See United States v. Ayala-Vázquez, 751 F.3d 1, 31 (1st Cir. 2014); United States v. Alejandro-Montañez, 778 F.3d 352, 357, 360-61 (1st Cir. 2015). However, I find it inappropriate and constitutionally suspect for one defendant to receive a longer sentence than his co-conspirator when both engaged in the same conduct. In effect, we are punishing García for exercising his constitutionally guaranteed rights in opting to go to trial. I fear that our continued adherence to this belief will only discourage defendants from exercising the rights that we are all entitled to under the Constitution.