# United States Court of Appeals
## For the First Circuit

No. 18-1620

UNITED STATES OF AMERICA,

Appellee,

v.

SUZANNE BROWN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph N. Laplante, U.S. District Judge]

Before

Thompson, Selya, and Barron,
Circuit Judges.

Julia Pamela Heit for appellant.
Seth R. Aframe, Assistant United States Attorney, with whom
Scott W. Murray, United States Attorney, was on brief, for
appellee.

December 20, 2019

**BARRON**, **Circuit Judge**.  Suzanne Brown was convicted in the United States District Court for the District of New Hampshire in 2017 on twelve counts of making a materially false statement to a federal agency under 18 U.S.C. § 1001(a)(2).  She now appeals from those convictions on a number of grounds, including that she received ineffective assistance of counsel at trial in violation of the Sixth Amendment of the federal Constitution.  We dismiss without prejudice her claim of ineffective assistance of trial counsel.  We reject her other challenges to her convictions.

**I.**

Suzanne Brown founded and ran a nonprofit agricultural organization, the New Hampshire Institute of Agriculture and Forestry ("NHIAF").[1]  The NHIAF owned and operated two small plots of land that it rented out to novice farmers and on which it provided agricultural instruction to them.  The NHIAF also

---

[1] Brown raises a sufficiency-of-the-evidence challenge to her convictions, which usually demands a recitation of facts "in the light most favorable to the verdict."  United States v. Burgos-Montes, 786 F.3d 92, 99 (1st Cir. 2015).  But she also alleges instructional and other errors, for which we typically "offer a 'balanced' treatment, in which we 'objectively view the evidence of record.'"  Id. (citation omitted) (first quoting United States v. Felton, 417 F.3d 97, 99 (1st Cir. 2005); and then quoting United States v. Nelson-Rodriguez, 319 F.3d 12, 23 (1st Cir. 2003)).  Because "we cannot simultaneously recite the facts in both manners, we limit our initial summary . . . to those details essential to framing the issues on appeal," and describe other facts, where necessary, in the appropriate discussions of Brown's challenges.  Id.

delivered produce from New Hampshire farmers to buyers elsewhere in the state.

On behalf of the NHIAF, Brown applied for and obtained Rural Business Enterprise Grants ("RBEGs") from the United States Department of Agriculture ("USDA" or "the Department") for both 2011 and 2012. Funds from those grants, which were awarded competitively, were to be used in part to pay Julie Moran and Wilma Yowell for their work as independent contractors for the NHIAF.

To obtain the funds that the RBEGs provided, Brown each month filled out, signed, and submitted a standardized government form -- labeled the "Standard Form 270" ("SF-270") -- to the Department. On each such SF-270, she listed the "[t]otal program outlays" for the month; these dollar amounts, Brown concedes, were based in part on the amount of work that Moran and Yowell had performed for the NHIAF. She also checked a box that confirmed that she was seeking "reimbursement" payments. In addition, on each such SF-270, she signed a certification that stated that "to the best of my knowledge . . . all outlays were made in accordance with the grant conditions." The grant conditions were set forth, in part, in a separate letter of conditions from the Department, most of which Anne Getchell, a Department employee, testified that she had reviewed line-by-line with Brown when the NHIAF was awarded the first RBEG.

Brown attached typed reports to the first three SF-270s that she submitted. The typed reports set forth the number of hours that Moran and Yowell allegedly had worked for the NHIAF. Getchell testified that she told Brown that better documentation -- in the form of invoices or paystubs -- would be required in the future. Thereafter, Brown attached invoices that identified the hours that Moran and Yowell allegedly had worked for the NHIAF.

The NHIAF had not paid either Moran or Yowell at the time that Brown submitted the SF-270s. In fact, the NHIAF did not at any point pay them, though the NHIAF did occasionally provide them with some groceries and reimburse them for specific expenditures that they had made with their own funds.

On February 10, 2016, Brown was indicted in the District of New Hampshire on twelve counts of "Making a Material False Statement to a Federal Agency" under 18 U.S.C. § 1001(a)(2). That provision criminalizes, "in any matter within the jurisdiction of the executive . . . branch of the Government of the United States, knowingly and willfully . . . mak[ing] any materially false . . . statement or representation." Id.

Each of the twelve counts charged Brown with falsely "representing to the [Department], in a Standard Form 270 'Request for Advance or Reimbursement' and appended supporting documentation, that the [NHIAF] -- of which BROWN was the Executive Director -- had paid [funds] to [the] NHIAF employees [Moran and

- 4 -

Yowell] for services rendered, as grounds to draw down funds from a previously approved USDA [RBEG]." Counts four through nine of the indictment, moreover, charged Brown not only with falsely claiming that the NHIAF had made "payments to [Moran] and [Yowell] for the services rendered" but also with falsely representing that Moran and Yowell "prepared or approved the invoices submitted by BROWN with the Standard Form 270." Counts ten through twelve omitted the references to Yowell but were otherwise the same as counts four through nine.

On January 26, 2017, Brown was convicted by a jury on all twelve counts. After the verdict, Brown brought multiple challenges to her convictions, including that she had received ineffective assistance of counsel at trial. The District Court held an evidentiary hearing on the motion for new trial that she filed based on the claimed ineffective assistance of trial counsel. The hearing focused on a discrete aspect of that motion, which concerned a chambers conference that the District Court had convened to address how to respond to a request for additional information that the jury made during its deliberations. The District Court ultimately denied the motion for new trial based on ineffective assistance of counsel without prejudice. The District Court sentenced Brown to a term of twelve months of imprisonment. She then timely filed this appeal.

We start with Brown's contention that her convictions were not supported by sufficient evidence. The government counters that the evidence sufficed to show that, by listing as "total program outlays" on the SF-270s certain dollar amounts that Brown concedes were partly based on the hours of work that Moran and Yowell had performed for the NHIAF, Brown was necessarily falsely representing to the Department that Moran and Yowell already had been paid for that work when they had not been. At trial, in support of that basis for finding Brown guilty on each of the twelve counts, the government put forth the testimony of Getchell, the Department employee, who stated that the meaning of "total program outlays" on the SF-270 was such that, by listing the dollar figures for the "total program outlays," Brown was necessarily representing that the NHIAF had already paid out the listed amount of funds to Yowell and Moran and not simply that it owed them that amount for the work that they had already performed for the NHIAF but for which the NHIAF had not yet paid them.

The government separately contends, however, that the evidence also sufficed to show that Brown, in her SF-270 submissions, falsely represented that Moran and Yowell already had been paid for their work in another way. The government points out that the SF-270 that Brown signed each month expressly stated that "all outlays were made in accordance with the grant conditions

or other agreement." (emphasis added). Because there are no other relevant agreements, the government argues that, in signing and submitting the SF-270s, she was necessarily certifying her compliance with the grant conditions. That certification is important, the government then goes on to contend, because the evidence at trial included the letter from the Department that set forth the grant conditions, which stated that "[t]he [a]gency will disburse grant funds . . . on a reimbursement basis" and that "[a]dequate documentation will be required to evidence expenditures." Furthermore, the evidence at trial included Getchell's testimony that she had reviewed most of that letter with Brown line-by-line, that the grant conditions independently required Brown to "actually spend the funds for the purposes outlined" before the Department would reimburse the funds, and that the documentation condition in particular required "show[ing] what was paid out." This testimony accords, moreover, with the text of the grant conditions letter, as the letter states that the funds would be paid out on a "reimbursement" basis and that the NHIAF needed to document "expenditures" to receive funding.

In her opening brief to us, Brown contends, and the government does not dispute, that the term "outlays" in the SF-270 encompasses "in-kind contributions." She then contends that a circular from the United States Office of Management and Budget ("OMB") defines "[t]hird party in-kind contributions" to include

uncompensated work performed by contractors. In her view, because the circular purports to establish uniform administrative requirements for certain federal grants, the definition of "third party in-kind contributions" that it provides fatally undermines the government's contention that, when she listed certain dollar amounts as "total program outlays" on the SF-270s, she was necessarily representing that the NHIAF had paid Yowell and Moran for their work for the NHIAF rather than merely that they were owed that amount of money for the work that they had performed for it but for which they had not yet been paid. The government responds, however, that Brown testified that she knew the monies from the grant were meant to reimburse her for paying "salaries," and not to pay her for Yowell and Moran's uncompensated work.

Brown does not address in her opening brief, however, any of the evidence that the government introduced at trial and that we have described above, which concerns the import of her certification to having complied with the grant conditions. Instead, she focuses solely on the evidence introduced at trial that concerns the import of her representation concerning "total program outlays." Thus, Brown leaves unaddressed the other evidentiary basis for affirming the convictions on which the government relies, which consists of the evidence that concerns her certification of compliance with the grant conditions. To be sure, Brown does purport to address in her reply brief this other

basis for finding that her convictions were supported by sufficient evidence. But, in doing so, she merely repeats her contentions in her opening brief about the meaning of the term "outlays" in the SF-270s. She does not grapple with the significance of her certification of compliance with the grant conditions in submitting the SF-270s. Thus, because Brown fails to develop an argument as to why the government is wrong to contend that the evidence concerning the import of her certification of compliance with the grant conditions in and of itself suffices to support the convictions, we must reject her sufficiency-of-the-evidence challenge to them. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace." (quoting Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988))); see also United States v. Gaw, 817 F.3d 1, 5 (1st Cir. 2016) (holding that where "alternative, independently sufficient grounds" exist for upholding a conviction against a sufficiency-of-the-evidence challenge, the defendant's failure to address one of those grounds on appeal means "that conviction must be affirmed" (first quotation quoting United States v. Cruz-Arroyo, 461 F.3d 69, 73 (1st Cir. 2006))).

Brown separately argues based on Bronston v. United States, 409 U.S. 352 (1973), that each of her convictions must be reversed because the allegedly false statements that she made were

technically correct.  In Bronston, the Court held that a literally true but misleading statement cannot form the basis for a conviction under the federal perjury statute.  Id. at 362. However, we must reject Brown's Bronston-based challenge because, as we have just explained, unlike the defendant in that case, Brown does not develop any argument that her certification of her compliance with the grant conditions was insufficient to show that the statements she made were not technically correct.  See id. at 354 (noting that "[i]t is . . . undisputed that petitioner's answers were literally truthful").[2]

### III.

As a fallback, Brown argues that each of her convictions must be vacated in consequence of what transpired at a chambers conference that the District Court convened during the jury's deliberations.  The District Court convened that conference with counsel for both Brown and the government to discuss how to respond to the jury's request during its deliberations for a definition of "in-kind services."  Following that conference, the District Court

---

[2] Brown asserts that a "false statement conviction cannot depend on the jury's interpretations of conflicting regulations." To the extent Brown means to argue that, even if she made a statement that a jury supportably could find to be literally false, she still cannot be convicted because of the particular nature of her false statement, the argument is waived for lack of development.  See Zannino, 895 F.2d at 17 ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

- 10 -

instructed the jury, in response to its request, to rely on its "best recollection of the evidence presented at trial."

Brown asserts on appeal that she was "excluded" from this chambers conference and that her lawyers refused to raise her preferred arguments for responding to the jury's request when she later asked them to do so. Had she been present at the chambers conference, she argues, "[s]he would have insisted that her attorneys accept the court's offer to use the definition of 'in kind' services defined in the regulations." Thus, Brown contends, she was denied her federal constitutional right "to be present at any stage of the criminal proceeding that is critical to its outcome if [her] presence would contribute to the fairness of the procedure." United States v. Wallace, 82 F. App'x 701, 702 (1st Cir. 2003) (quoting Kentucky v. Stincer, 482 U.S. 730, 745 (1987)).

Brown purports to ground this challenge in the Sixth Amendment of the federal Constitution, but, "[i]n situations where confrontation is not at issue, a criminal defendant's right to be present at trial is protected by the Fifth Amendment Due Process Clause." United States v. Brown, 669 F.3d 10, 32 (1st Cir. 2012). And, under the Fifth Amendment, a defendant's "privilege of presence is not guaranteed 'when presence would be useless, or the benefit but a shadow.'" Stincer, 482 U.S. at 745 (quoting Snyder v. Massachusetts, 291 U.S. 97, 106-07 (1934)).

- 11 -

We may bypass the question of whether, as the government contends, our review is only for plain error due to Brown's failure to object to her exclusion below. For, Brown's challenge fails even under de novo review.

Brown argues that, if she had not been absent from the chambers conference, she would have argued, as her own counsel did not, in favor of responding to the jury's request by supplying a definition of "in-kind services" rooted in the definition provided in the circular published by the OMB. She contends, as we have noted, that this definition supports her assertion that, in listing the dollar amounts as "total program outlays" on the SF-270s that she submitted, she was merely representing the amount of funds that Yowell and Moran were owed for the work that they had performed for the NHIAF and not the amount of money that they had been paid by the NHIAF for that work.

But, we agree with the government that, insofar as the jury's request regarding the meaning of "in-kind services" raised an issue of law, it was for Brown's lawyers, not Brown herself, to have made the legal argument. See United States v. Jones, 674 F.3d 88, 94 (1st Cir. 2012) (recognizing that "a defendant's presence on a legal issue (whether at sidebar or in chambers) is not going to aid the defense counsel"); United States v. Sanchez, 917 F.2d 607, 619 (1st Cir. 1990) ("Since the issue under consideration . . . was [a] legal one . . . we are not persuaded

- 12 -

that appellant's presence would have contributed to the 'fairness of the proceeding.'").  And, insofar as the jury's request is better understood to have raised an issue of fact about the meaning of "outlays" in the SF-270 that the trial evidence did not address, Brown fails to explain how it would have been proper for the District Court to have provided the jury with new evidence at that stage of the proceedings, given that the jury had already begun its deliberations.  See United States v. Ofray-Campos, 534 F.3d 1, 18 (1st Cir. 2008) ("[T]he jury's verdict must be based solely upon the evidence developed at trial." (citing Turner v. Louisiana, 379 U.S. 466, 472 (1965))); cf. United States v. Pagán-Romero, 894 F.3d 441, 446 (1st Cir. 2018) ("Provision of a dictionary to a jury by a judge after the close of the evidence and the instructions -- except perhaps in extraordinary circumstances and after thorough discussion with counsel on the record -- should not happen.").

**IV.**

Brown next argues that each of her convictions must be vacated because the District Court erred in providing what she calls a "nullification instruction" to the jury.  The District Court provided the following instruction:

> You are not to be concerned with the wisdom of any rule of law as stated by the court.  Nor should you be concerned with your opinion, favorable or unfavorable, of the New Hampshire Institute of Agriculture and Forestry (NHIAF),

- 13 -

its work, or the federal grant program involved. Regardless of any opinion that you may have as to what the law ought to be, or any opinion, favorable or unfavorable, that you may have regarding the NHIAF, its work, or the federal grant program involved, it would be a violation of your sworn duty to base a verdict upon any other view of the law than that given in the instructions of the court, just as it would be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything but the evidence in this case.

A district court that supportably perceives a risk that jurors may refuse to apply the law "may instruct the jury on the dimensions of their duty to the exclusion of jury nullification." United States v. Sepulveda, 15 F.3d 1161, 1190 (1st Cir. 1993); see also United States v. Appolon, 695 F.3d 44, 65 (1st Cir. 2012) ("[A] district court may instruct a jury that it has a duty to return a guilty verdict if convinced beyond a reasonable doubt of a defendant's guilt on a particular charge."). We review a district court's decision to give such an instruction for abuse of discretion. See United States v. De La Cruz, 835 F.3d 1, 12 (1st Cir. 2016).

The District Court explained that that "there was some commentary about the importance of the [NHIAF] mission" and that "the jury could become a little distracted by that." The District Court also expressed concern about "fairly impassioned testimony from the defendant about the NHIAF, its mission, [and] the importance of the mission to her and the community," which included

- 14 -

Brown's testimony that described "how we help people in the state of New Hampshire that farm for a living." Because the District Court based its decision to give the instruction on the risk of nullification that it supportably perceived, there was no abuse of discretion.

## V.

Brown separately takes aim at her convictions for counts four through twelve. In them, as we have noted, she was charged not only with falsely claiming to have made "payments to [Moran] and [Yowell] for the services rendered" but also with falsely representing that Moran and Yowell "prepared or approved the invoices submitted by BROWN with the Standard Form 270."[3] Brown contends that her convictions on these counts must be vacated, because each count contained multiple offenses and thus was duplicitous, thereby creating a risk of a jury verdict on each count that lacked unanimity as to the offense that she committed. See United States v. Verrecchia, 196 F.3d 294, 297 (1st Cir. 1999) (explaining that "[d]uplicity is the joining in a single count of two or more distinct and separate offenses" (quoting United States v. Canas, 595 F.2d 73, 78 (1st Cir. 1979))).

The government does not dispute that these counts contained multiple offenses. But, it argues that Brown waived the

---

[3] Counts ten through twelve omitted the references to Yowell but were otherwise the same in this respect.

duplicity challenge to them by not raising it to the District Court. We agree. See Fed. R. Crim. P. 12(b)(3)(B)(i); Verrecchia, 196 F.3d at 297.

Even in the event of such a waiver, a defendant is "entitled on request to an instruction requiring jury unanimity on which offense (of the two or more alleged in the duplicitous count) [s]he committed." Verrecchia, 196 F.3d at 297. But, Brown made no such request at trial. Nor is it clear that she means to challenge on appeal the District Court's failure to have given such an instruction.

To the extent that Brown does mean to make that instructional challenge on appeal and it is not waived in consequence of her not having made it below, our review would be only for plain error. See United States v. Newell, 658 F.3d 1, 20 (1st Cir. 2011). But, Brown cannot show the prejudice that she must under the plain error standard. Brown does not argue that there is a reasonable probability that the jurors, if given a specific unanimity instruction, would not have agreed to convict Brown on counts four through twelve based on statements in the SF-270s that she submitted that represented that she had paid Moran and Yowell. Rather, she admits that the court's jury instructions focused on those false forms and "did not even charge the jury that Brown's conviction could be premised on an alleged false statement that Moran and Yowell approved the invoices submitted by

her." Instead, she argues that the invoice-based allegations opened the door for the government to introduce evidence "that the contractors did not approve the invoices submitted by Brown." But, a specific unanimity instruction would have done nothing to address that concern.

## VI.

Brown's final challenge to her convictions depends on the assertion that her lawyers rendered ineffective legal assistance at trial in violation of the Sixth Amendment. Brown identifies a long list of alleged deficiencies in her lawyers' performance at trial, which includes their alleged failure to effectively make her arguments regarding the OMB circular's definition of "in-kind contributions" and their failure to object to the indictment on duplicity grounds. She thus contends that her convictions must be vacated in consequence.

We have repeatedly observed that "an appellate court usually is ill-equipped to handle the fact-specific inquiry" that ineffective assistance of counsel claims often demand when they have not been adjudicated below. Ofray-Campos, 534 F.3d at 34. Thus, in such circumstances, our usual "practice is to dismiss ineffective assistance claims on direct appeal without prejudice to their renewal in a habeas petition brought pursuant to 28 U.S.C. § 2255." United States v. García-Pagán, 804 F.3d 121, 126 (1st Cir. 2015).

Here, the District Court did hold an evidentiary hearing on a discrete aspect of Brown's motion for a new trial based on ineffective assistance of counsel. But, after recognizing that Brown's ineffective assistance of counsel claim "involve[d] defense counsel's entire trial strategy," the District Court declined to continue developing the record and denied that motion without prejudice.

The result is that this case is not the "exceptional" one in which "the record is sufficiently developed" to permit initial appellate consideration of Brown's ineffective assistance claim. Ofray-Campos, 534 F.3d at 34. Moreover, Brown does not argue that the District Court abused its discretion by declining to decide her ineffective assistance claim before sentencing, and she does not identify any other reason that we should "remand the case for proceedings on the ineffective assistance claim without requiring the defendant to bring a separate collateral attack." United States v. Ortiz-Vega, 860 F.3d 20, 29 (1st Cir. 2017) (citing United States v. Colón-Torres, 382 F.3d 76, 84-85 (1st Cir. 2004)). In fact, Brown's counsel conceded below that Ortiz-Vega did not require the District Court to resolve Brown's ineffective assistance claim before sentencing, waiving any argument to the contrary. Accordingly, we follow our usual practice and dismiss it without prejudice.

## VII.

For the foregoing reasons, we **affirm** Brown's convictions and **dismiss without prejudice** her claim of ineffective assistance of counsel.