FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

EDGAR J. STEELE,
*Defendant-Appellant*.

No. 12-30005

D.C. No.
2:10-cr-00148-BLW-1

OPINION

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

Argued and Submitted
July 8, 2013—Portland, Oregon

Filed October 24, 2013

Before: Harry Pregerson, Mary H. Murguia,
and Morgan Christen, Circuit Judges.

Opinion by Judge Christen

**SUMMARY**[*]

**Criminal Law**

Affirming the district court's order denying a criminal defendant's motion for new trial, the panel held that although consideration of a pre-judgment ineffective-assistance-of-counsel claim is appropriate in some cases, the district court did not abuse its discretion here by deferring consideration of the defendant's ineffective assistance claim to collateral review, when a complete record would be available.

**COUNSEL**

Dennis P. Riordan (argued); Donald M. Horgan, Riordan & Horgan, San Francisco, California, for Defendant-Appellant.

Syrena C. Hargrove (argued); Wendy J. Olson, United States Attorney, Boise, Idaho, for Plaintiff-Appellee.

**OPINION**

CHRISTEN, Circuit Judge:

This opinion considers when a trial court should determine the merits of an ineffective assistance of counsel claim presented in a pre-judgment motion for a new trial. A

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

federal jury convicted Edgar Steele of murder-for-hire and victim tampering arising from Steele's plan to kill his wife and mother-in-law.[1]  Steele argues that the district court erred by denying his pre-judgment motion for new trial without reaching the merits of his claim of ineffective assistance of trial counsel.  Although consideration of a pre-judgment ineffective-assistance-of-counsel claim is appropriate in some cases, here the district court did not err by deferring consideration of Steele's ineffective assistance claim to collateral review, when a complete record would be available.[2]

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, and we affirm the district court's order denying the motion for new trial.

## I.  BACKGROUND

According to the evidence presented by the government at trial, Larry Fairfax worked as Edgar Steele's handyman and Steele, himself a criminal defense attorney, hired Fairfax to kill Steele's wife and mother-in-law.  The government presented evidence that Steele instructed Fairfax to create two pipe bombs and place one on his wife's car and the other, as a decoy, on his own car so that Steele would look like an intended victim.  Fairfax created the pipe bombs and installed

---

[1] Steele was convicted of violating 18 U.S.C. § 1958 (use of interstate commerce facilities in the commission of murder-for-hire), 18 U.S.C. § 844(h) (use of explosives to commit a federal felony), 18 U.S.C. § 924(c)(1)(B)(ii) (possession of a destructive device in relation to a crime of violence), and 18 U.S.C. § 1512(b) (tampering with a victim).

[2] We address Steele's other claims in an unpublished memorandum disposition filed concurrently with this opinion.

them so the cars' exhaust pipes would serve as the ignition sources, but the device on Cyndi Steele's car failed to explode.  At Steele's behest, Fairfax investigated what happened and erroneously concluded that the bomb had fallen off.  He then dismantled the decoy bomb and removed it from Steele's car.  But Steele was not ready to shelve his plans.  He threatened to hire another hitman and add Fairfax to the list of targets if Fairfax did not follow through with the killings.

This threat appears to have backfired.  Instead of going through with a second murder attempt, Fairfax turned to the FBI and told them about Steele's offer to pay him for the murders.[3]  The FBI arranged for Fairfax to wear a recording device and Fairfax recorded two subsequent conversations with Steele.  The Fairfax-Steele recordings consist of discussions that took place outside or in a barn at Steele's ranch; discussions of horse care are interspersed with plans for a second murder attempt, this one designed to look like a car accident.  On the day Steele and Fairfax had agreed upon for the second murder attempt, law enforcement officials came to Steele's home and falsely informed him that his wife was dead so they could measure his reaction.  They subsequently told him that she had not been killed, and they arrested him.  Meanwhile, Cyndi Steele was informed of the circumstances of the charges against her husband, and asked to hear the Fairfax-Steele recordings.  Apparently aware of this, Steele spoke with his wife from jail on a recorded telephone two days later.  He told her that the police would

---

[3] Fairfax initially omitted any explanation about actually building and planting the two pipe bombs, but a fortuitously-timed oil change led to the discovery of the pipe bomb on Cyndi Steele's car, charges against Fairfax, and Fairfax's agreement to testify against Steele.

try to use her to authenticate his voice on the recordings with Fairfax, and he said,

> After you hear this tape tomorrow, no matter what you hear, no matter what you think, no matter what you feel, you have to say the following: 'No, that is not my husband's voice.' And then like a rhinoceros in the road, you have to stand your ground and refuse to say anything but that.

The recorded conversation between Steele and his wife formed the basis for the government's victim tampering charge against Steele.

The government's case against Steele included the Fairfax-Steele recordings, Fairfax's testimony, physical evidence of the bomb placed on Cyndi Steele's car, the dismantled bomb, testimony of the police and FBI agents involved in Steele's arrest, and the jailhouse recording of Steele telling Cyndi that she needed to deny that the voice on the recordings was his. Steele's defense was that he was framed and that the recordings of his conversations with Fairfax were fabricated.

At a pre-trial *Daubert* hearing, Steele's trial attorney attempted to qualify two forensic experts to discredit the government recordings of the conversations between Fairfax and Steele. The district court's rulings on the qualifications of those experts have not been appealed. One of the witnesses was willing to testify the tapes had been fabricated, but the district court ruled the witness was not qualified. The other witness, Dr. George Papcun, was qualified by the court, but was not prepared to testify that the recordings had been

fabricated. He opined that the recordings had an unusually large number of gaps, "electronic signatures," and "electronic transients" that could have been caused by a number of things — equipment anomalies, equipment malfunctions, inadvertent starts and stops of the recording, ambient noise, *or* purposeful editing. He was prepared to testify that the electronic disturbances in the recordings signified that "whatever is on these recordings is not entirely whatever occurred in the real environment being recorded." The court ruled that Papcun's testimony was not likely to be relevant at trial and that Dr. Papcun could not testify without a factual predicate being established. Because Dr. Papcun's testimony was deemed to be "of very limited probative value," the district court ruled that it would only be allowed if there was evidence introduced at trial that something on the recordings was not said, or that something said was not on the recordings.

Once the trial was underway, the jury heard testimony from Steele's wife that the voice on the recordings was not Steele's and the district court ruled that Dr. Papcun would be permitted to testify. But Dr. Papcun was not available; he was on a pre-planned vacation in Bora Bora and Steele's trial counsel, Robert McAllister, had not subpoenaed him. The district court declined to allow Dr. Papcun to testify by video and only permitted a one-day continuance, explaining: "this is a problem of the defense's making, not the court's. And I think that if they made a tactical or otherwise made a decision to not keep Dr. Papcun available, then that's the choice they made." Steele was convicted on all charges.

About a month after the jury verdict, McAllister acknowledged taking over $100,000 of client funds for his personal use in a different case. McAllister eventually plead

guilty and was sentenced on conspiracy and bankruptcy fraud charges.

Steele responded by engaging substitute counsel, and his new attorneys filed a motion for new trial alleging that McAllister and another member of the defense team had rendered ineffective assistance. The district court declined to take up the ineffective assistance argument, ruling that consideration of it would be proper in a habeas petition where a factual record could be developed. The court denied the motion, and this appeal followed.

## II. DISCUSSION

The standard this court applies to decide whether to review ineffective assistance of counsel claims raised on direct appeal is well established. Such claims are "generally inappropriate on direct appeal" and should be raised instead in habeas corpus proceedings. *United States v. Ross*, 206 F.3d 896, 900 (9th Cir. 2000). We consider them only "where the record is sufficiently developed to permit review and determination of the issue, or the legal representation is so inadequate that it obviously denies a defendant his Sixth Amendment right to counsel." *United States v. Rivera-Sanchez*, 222 F.3d 1057, 1060 (9th Cir. 2000) (internal quotation marks omitted).

Though district courts have heard pre-judgment ineffective assistance of counsel claims on occasion, *see, e.g.*, *United States v. Del Muro*, 87 F.3d 1078, 1080 (9th Cir. 1996), we have not previously articulated the standard a *district court* should apply to decide whether to rule on such a claim. We agree with the Second Circuit's decision in *United States v. Brown*, that a district court need not "invoke

an appellate court's rubric and require a defendant to use his one § 2255 motion to raise an ineffective assistance claim post-judgment, particularly when the district court is in a position to take evidence, if required, and to decide the issue pre-judgment." 623 F.3d 104, 113 (2d Cir. 2010). We adopt the rule in *Brown* that "when a claim of ineffective assistance of counsel is first raised in the district court prior to the judgment of conviction, the district court may, and at times should, consider the claim at that point in the proceeding." *Id.* This decision is best left to the discretion of the district court. *See United States v. Miskinis*, 966 F.2d 1263, 1269 (9th Cir. 1992) (remarking in context of appellate review that "the decision to defer resolution of an ineffective assistance of counsel claim is a discretionary one and depends upon the contents of the record").

Requiring a defendant to wait for post-conviction relief has several consequences, including that a defendant may serve months in prison waiting for post-conviction arguments to be heard. Lengthy delays necessarily entail concomitant weakening of memories and aging of evidence. Additionally, a defendant might be without representation in post-conviction proceedings but entitled to substitute counsel if the claim is heard before entry of final judgment. *See Del Muro*, 87 F.3d at 1080–81 (requiring appointment of new counsel when district court grants evidentiary hearing on ineffectiveness claim).

But "[w]e are mindful that district courts face competing considerations in deciding whether it is appropriate to inquire into the merits of [ineffective assistance] claims prior to judgment, including . . . the . . . disruption of the proceedings." *Brown*, 623 F.3d at 113. "The decision to interrupt the pre-judgment proceedings to inquire into the

merits of an ineffective assistance of counsel claim may depend on, among other things, whether the court would need to relieve the defendant's attorney, or in any event, to appoint new counsel in order to properly adjudicate the merits of the claim." *Id.* The district court's decision may also depend on the existence of evidence already in the record indicating ineffective assistance of counsel, or upon the scope of the evidentiary hearing that would be required to fully decide the claim.

In this case, we have no trouble concluding that the district court did not abuse its discretion by declining to consider Steele's ineffective assistance claims prior to the imposition of judgment. Steele focuses his appeal on his argument that McAllister was ineffective for failing to secure Dr. Papcun's presence at trial. But in the district court, Steele's substitute counsel named seven different "possible sources" of McAllister's ineffective assistance in his motion for a new trial.[4] In addition to the arguments regarding McAllister's allegedly ineffective performance, the motion argued that another attorney from Steele's defense team had failed to render adequate legal assistance. Unlike in *Brown*, Steele's claim was broad-based and the evidentiary record to consider it was sorely lacking.[5] Even if the motion Steele presented to the district court had been as focused as the argument raised on appeal, the record before the trial court

---

[4] His motion argued that McAllister was also ineffective by failing to: (1) formulate a defense theory; (2) conduct effective cross-examination; (3) make objections; (4) prepare defense witnesses and introduce documentary evidence; (5) move for a mistrial; and (6) make a meaningful closing argument.

[5] In *Brown*, the defendant's attorney failed to communicate the government's plea offer to the defendant. *See* 623 F.3d at 113–14.

did not include a clear explanation of McAllister's decision to forgo subpoenaing Dr. Papcun's testimony. The trial record shows that the subpoena was not overlooked; defense counsel made the conscious decision not to subpoena this witness. But apart from statements McAllister made in discussions held out of the presence of the jury, the record lacks an explanation from McAllister regarding this trial strategy. Coupled with the important fact that the district court had already determined, after a pre-trial *Daubert* hearing, that Dr. Papcun's testimony did not include an opinion that the tapes were fabricated and would be of limited probative value, this under-developed record informs our decision that the district court did not abuse its discretion by failing to take up the motion. Moreover, the district court, alert to issues of ineffectiveness following Steele's counsel's subsequent legal troubles, expressed on the record that, with respect to ethical lapses, "certainly nothing that occurred in the courtroom gave me any pause or concern in that regard."**[6]**

Steele argues that the district court's ambiguously worded order denying his motion for new trial reveals that the court erroneously understood it lacked the discretion to hear his pre-judgment motion. *See United States v. $11,500.00 in U.S. Currency*, 710 F.3d 1006, 1011 (9th Cir. 2013) ("A district court abuses its discretion if it does not apply the correct legal standard . . . ."); *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990) ("A district court's failure to exercise discretion constitutes an abuse of discretion."). Here, the district court's order explained that the "proper procedure for challenging the effectiveness of counsel is by

---

**[6]** Because the relief Steele requests on appeal is a remand for evidentiary development, not a decision on his ineffective assistance claim, we do not evaluate the merits of his ineffective assistance claims.

a collateral attack on the conviction." When taken out of context, this language could be read as referring to a general standard rather than as an assessment of Steele's particular motion. Steele's assertion that the district court misunderstood its authority is belied by the record. First, we note the district court's unambiguous assertion of its authority to consider Steele's motion in its entirety. At the outset of its order, the district court followed its recitation of all seven of Steele's claims by observing its discretion to consider and to grant the motion for a new trial pursuant to the Federal Rules of Criminal Procedure. The district court's plain assertion of its discretion to consider a motion for a new trial, without further qualification based on the nature of the claims asserted, is telling.

Further, in direct support of its ruling that Steele's ineffectiveness claim was better addressed in a collateral attack on conviction than in a post-trial motion, the district court cited an unpublished decision, *United States v. Ross*, 442 Fed. Appx. 290 (9th Cir. 2011), recognizing that a district court does have the discretion to hear an ineffective assistance of counsel claim before collateral proceedings are commenced. *Ross* states, "there is no fixed rule against determining the ineffectiveness [of counsel] question on direct appeal where the record so permits. Rather, the decision to defer resolution of an ineffective assistance of counsel claim is a discretionary one and depends upon the contents of the record in a particular case." *Id.* at 293 (internal quotation marks and citation omitted). The district court's citation to *Ross* shows that the district court understood it had the discretion to entertain Steele's

ineffective assistance claim without waiting for the initiation of collateral proceedings.[7]

The circumstances of Steele's request, including the lack of a significant record necessary to adequately consider his broad-based motion, make plain that the trial court was best suited to decide whether the interests of justice and judicial economy would be served by delaying the trial proceedings to conduct an immediate hearing on an under-developed motion. The district court's ruling was well within its discretion.

**AFFIRMED.**

---

[7] Although it is not binding authority, we note that Judge Winmill, in particular, understood the district court's discretion to consider a pre-judgment ineffective assistance of counsel motion; he granted one in an unpublished decision in 2006. *See United States v. Moses*, No. CR-05-061, 2006 WL 1459836 (D. Idaho 2006).