# United States Court of Appeals
## For the First Circuit

No. 14-1693

UNITED STATES OF AMERICA,

Appellee,

v.

ANGEL ORTIZ-VEGA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Torruella, Thompson, and Kayatta,
Circuit Judges.

Rafael F. Castro Lang for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney, with
whom Rosa Emilia Rodríguez-Vélez, United States Attorney and
Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief,
Appellate Division, were on brief for appellee.

June 21, 2017

**THOMPSON**, **Circuit Judge**.  Appellant Angel Ortiz-Vega ("Ortiz") was charged with several counts related to a drug distribution conspiracy in Puerto Rico.  Ortiz was originally represented by court-appointed counsel, Francisco M. Dolz-Sanchez ("Dolz"), but after seven months retained private counsel, Luis R. Rivera-Rodriguez ("Rivera"), because, according to Ortiz, Dolz failed to provide him with effective assistance of counsel throughout plea negotiations.  Ortiz raised his ineffective assistance claim at several points prior to sentencing, claiming that Dolz's lack of adequate communication cost him a better plea deal.  The district court declined to rule on Ortiz's ineffective assistance claim prior to sentencing, finding the motion to be "premature."  Ortiz eventually pled guilty to a higher plea offer negotiated by his new counsel and was sentenced in accordance with that agreement.

On appeal, Ortiz argues, inter alia, that the district court erred by refusing to rule on the merits of his ineffective assistance claim prior to sentencing.  For the reasons discussed below, we agree with Ortiz and remand the case to the district court for further proceedings.

### Background

In the summer of 2011, Ortiz was charged in a nine-count superseding indictment along with over a hundred other co-defendants allegedly involved in a large-scale drug conspiracy.

- 2 -

For his role, Ortiz was charged with conspiracy to possess with intent to distribute various controlled substances including heroin, cocaine, marijuana, Percocet, and Xanax, as well as the actual possession of those substances with intent to distribute them, within a thousand feet of a public school in violation of 21 U.S.C. §§ 841, 846, and 860 (Counts I-IV). Ortiz was also charged with aiding and abetting others in the use or possession of firearms during the drug offenses in violation of 18 U.S.C. § 924(c) and 2 (Count V).

On August 6, 2012, Ortiz ultimately entered into a non-binding plea agreement with the government, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), in which he agreed to plead guilty to the conspiracy and firearms charges (Counts I and V) with an applicable United States Sentencing Guidelines ("Guidelines") range of 168-180 months on both counts. See United States v. Torres-Oliveras, 583 F.3d 37, 41 (1st Cir. 2009) (discussing the difference between non-binding Type B and binding Type C plea agreements). The journey to reach this point of agreement had proven long and contentious, with Ortiz switching counsel and his previous (court-appointed) counsel, his current (privately-retained) counsel, and the government each making conflicting assertions as to the facts surrounding Ortiz's plea negotiations. We necessarily discuss the facts surrounding Ortiz's plea negotiations, since they form the basis of his present

- 3 -

appeal and assertion that the district court erred in failing to rule on his ineffective assistance claim prior to sentencing.

## 1. Plea Negotiations

Ortiz was arrested on the drugs and firearm charges described above in late June 2011. At that time, Dolz was appointed as his attorney. Dolz asserts that he first met with Ortiz in July 2011 to discuss the charges lodged against Ortiz and to conduct a full client interview. On January 24, 2012, six months after his arrest, Ortiz filed a pro se "Motion for Lawyer Dismissal" in which he requested that Dolz be "released from his position on [sic] [Ortiz's] case" because, according to Ortiz, Dolz had "acted in a [sic] unreasonable way" and had not communicated with him since he had been imprisoned. The court did not respond to Ortiz's pro se motion until six months after it was filed (after Ortiz had replaced Dolz with a privately-retained attorney), and the court ultimately dismissed Ortiz's pro se motion as moot given his retention of new counsel. The parties dispute how often Dolz communicated with Ortiz and the substance of their communications during plea negotiations.

According to Dolz, after Ortiz filed his pro se motion, Dolz reached out to the government via email to discuss a possible plea offer.[1] Dolz asserts that he then visited Ortiz on March 6,

_____

[1] Dolz also states that there was an initial "verbal" plea offer that no one took seriously. Dolz claims that the government

2012 -- some eight months after first interviewing Ortiz -- to further discuss Ortiz's case. Dolz claims that at this meeting Ortiz stated that he would only accept a plea offer of eighty-four months (or seven years) for both counts.

On March 19, 2012, the government offered Ortiz a plea deal well above seven years, with a Guidelines range of 130-147 months (or between a little over ten and a little over twelve years) on both counts. Dolz claims that he visited Ortiz again on April 7, 2012 to communicate the 130-147 month plea offer. According to Dolz, he advised Ortiz to take the offer, but Ortiz rejected it and reiterated that he would only accept a plea deal of seven years on both counts, or that he would go to trial. Dolz claims that as soon as he exited the prison after meeting with Ortiz, Ortiz's wife called and informed him that Ortiz no longer wanted to present a counteroffer of seven years to the government as they had just discussed, but instead wanted to present a counteroffer of sixty months on the conspiracy charge (Count I) and wanted the firearms charge (Count V) to be dismissed altogether.

---

had initially offered Otiz a verbal plea deal for 240 months sometime in August or September of 2011. Dolz claimed that although the government had tendered this verbal offer, neither of them took the offer seriously. Dolz states that he informed Ortiz of this verbal offer, but the record does not specify when Dolz communicated this offer or Ortiz's response to it.

- 5 -

Accordingly, on April 12, 2012, Dolz emailed the government Ortiz's counteroffer of sixty months. The government responded to Dolz's email with a one-liner: "Rejected. See you in trial then?" The record is ambiguous as to whether Dolz ever responded to this rejection of Ortiz's counteroffer, but it does indicate that Dolz may not have communicated with Ortiz again regarding plea negotiations until after Ortiz had retained new counsel three months later in July 2012.

Dolz asserts that at some point after Rivera had been retained (on July 24, 2012), but presumably prior to Dolz's last meeting with Ortiz on the following day (July 25, 2012), he communicated with the government via email to see if the 130-147 month offer was still on the table. Dolz claims that the government informed him that the original offer had expired and that the new offer was 180 months, which the government had also communicated to Rivera. Dolz also indicated that the government was mistaken in its statement that the original offer had expired and claimed that he believed that the original offer of 130-147 months had not expired and would not expire until July 31, 2012 -- the date set by the court for any change of plea.

On July 25, 2012, the day after Rivera filed his appearance in the case, Dolz claims that he visited and informed Ortiz that "there was a plea offer outstanding and that July 31, 2012 was the deadline for the [change of plea] motion." It is

unclear from the record whether the "outstanding plea offer" referenced by Dolz was the new 180 month offer or the previous 130-147 month offer which Dolz apparently believed had an expiration date of July 31, 2012.[2] Dolz also asserts that at this final July meeting, he informed Ortiz that his previous counteroffer of sixty months had been rejected and that there was nothing else Dolz could do since Ortiz had retained Rivera to handle his case. Despite Ortiz retaining new counsel, Dolz contends that the government continued to communicate with him concerning Ortiz's case and that on July 31, 2012 the government sent him a new plea offer of 168-180 months that was slated to expire on August 1, 2012.

The government mostly agrees with Dolz's account of plea negotiations, but also states that after rejecting Ortiz's counteroffer of sixty months, it understood that the original 130-147 month offer had been rescinded.

---

[2] It is unclear at what point Dolz was made aware of the 180 month offer and if he communicated that offer to Ortiz. On the one hand, Dolz claims that the government informed him that the 130-147 month plea offer had expired and that the new plea offer was 180 months prior to his meeting with Ortiz on July 25, 2012. On the other hand, Dolz claims that he was unaware of the new 168-180 month offer until July 31, 2012 when the government emailed him a new plea agreement. Dolz also indicated that he believed that it was Rivera who permitted the original 130-147 month offer to expire because Dolz believed that the original offer did not expire until July 31, 2012 -- after Rivera had been retained. It is therefore also unclear what "outstanding offer" Dolz communicated to Ortiz on his visit on July 25, 2012 (180 months or 130-147 months).

As expected Ortiz has a very different view of what occurred during plea negotiations. According to Ortiz, Dolz only visited him twice: once on April 7, 2012 to communicate the original 130-147 month plea offer and again after Ortiz had retained Rivera as his new counsel.[3] Ortiz claims that Dolz failed to keep him updated concerning plea negotiations and failed to communicate with him after the government rejected his counteroffer. In response to Ortiz's assertions, at a hearing before the district court, Dolz said that he "saw [Ortiz] as [he] need[ed] to see him" and that Ortiz was given the information needed regarding his case despite his assertion that Dolz only visited him twice. At another hearing, Ortiz countered that he never communicated to Dolz that he would rather go to trial, and that he always wanted to plead guilty, but that he was looking for the best deal. Of course, Dolz denied these contentions.

**2. Plea Agreement**

Regardless of the back and forth alleged by Ortiz and Dolz concerning plea negotiations, Ortiz did finally enter into a plea agreement with the government that was negotiated by his new counsel Rivera. According to Rivera, by the time he got involved

---

[3] Ortiz cites the jail visitation log record to support his claim that Dolz only visited him twice. According to those records, Dolz visited Ortiz on April 7, 2012 and again after Rivera had been retained. As discussed above, Dolz argues that he did not always sign the visitation log when he visited Ortiz and that there were more than two visits that had not been recorded.

with the case, the government refused to offer Ortiz the original plea offer of 130-147 months, claiming that its initial offer had expired. Ortiz alleges that he was faced with the choice of a higher plea deal or trial -- stuck between Scylla and Charybdis, he ultimately chose to take the higher plea deal.

Under the terms of the plea agreement, Ortiz's total offense level as to Count I was calculated with a base offense level of thirty (for possession of at least 3.5 but less than five kilograms of cocaine pursuant to U.S. Sentencing Guidelines Manual ("USSG") § 2D1.1(c)(5) (U.S. Sentencing Comm'n 2012); plus two levels for his role as a manager or supervisor pursuant to USSG § 3B1.1(c); plus two levels for the possession of drugs near a public school pursuant to USSG § 2D1.2(a)(1); minus three levels for acceptance of responsibility pursuant to USSG § 3E1.1(a)-(b). With a resulting total offense level of thirty-one on Count I, the applicable Guidelines range was 108-135 months, assuming a criminal history category of I.[4]

The parties agreed that a consecutive term of sixty months' imprisonment was applicable to Count V and ultimately agreed to a total Guidelines range of 168-180 months on both counts,[5] with the government reserving the right to request a

---

[4] The parties did not stipulate to the applicable criminal history category.

[5] We note that in calculating the total recommended Guidelines range the parties agreed to a range of 168-180 months on both

- 9 -

sentence at the high end of the Guidelines range and Ortiz reserving the right to request a sentence at the low end of the Guidelines range.[6] The government agreed to dismiss all remaining counts against Ortiz and the plea agreement also contained a waiver-of-appeals clause that barred Ortiz from appealing his sentence if sentenced in accordance with the terms of the agreement. Ortiz's change of plea hearing was held on August 6, 2012 (the same day that he signed the plea agreement).[7]

---

counts; however, when we tally the independently calculated Guidelines ranges provided for each individual count in the plea agreement (108-135 months on Count I and sixty months on Count V), we would expect the total agreed-upon sentence to be between 168-195 months -- fifteen months greater than the total actually agreed to by the parties.

[6] The plea agreement has several errors that were not corrected before signing. For instance, it is clear that in the original draft of the plea agreement, the government sought to hold Ortiz responsible for at least two kilograms, but not more than 3.5 kilograms, of cocaine. However, the parties edited the plea agreement by hand to hold Ortiz responsible for at least 3.5 kilograms, but less than five kilograms of cocaine. The correlated references to the Sentencing Guidelines were not corrected (i.e., instead of a reference to USSG § 2D1.1(c)(6), the proper section utilized to arrive at a base offense level of 30 was USSG § 2D1.1(c)(5)). Although we note the discrepancies, these typographical errors are of no consequence to our analysis here.

[7] As noted above, on appeal, Ortiz does not challenge the plea agreement entered nor does he seek to withdraw his guilty plea. He instead argues that the district court erred in failing to address the merits of his ineffective assistance claim prior to sentencing.

### 3. Sentencing

After pleading guilty, and before sentencing, Ortiz filed a pro se letter with the district court on November 8, 2012, again complaining about Dolz's representation during plea negotiations. In the letter, Ortiz did not request any specific relief beyond a "just sentence," but he again argued that Dolz visited him only once during plea negotiations and that Dolz never communicated with him further after that one meeting. Ortiz claimed that Dolz "neither advised [him] or represented [him] well" and that "[Dolz] completely abandoned [him]." In April 2013, Rivera filed a sentencing memorandum on Ortiz's behalf, highlighting Ortiz's complaints from the November letter about Dolz's representation and asserting Ortiz's ineffective assistance claim. In that memorandum, Rivera argued that Ortiz should be sentenced in accordance with the original plea offer of 130-147 months.

In a hearing on April 8, 2013 (at which Dolz was not present), Rivera discussed Ortiz's ineffective assistance claim and indicated to the court that he wanted to renegotiate the plea deal. The government responded that it would not renegotiate the plea deal. Rivera also argued that at the time Ortiz's family contacted him to represent Ortiz, Dolz "had not gone over to discuss with [Ortiz] either the discovery nor [sic] a possible plea." The court scheduled another hearing (in fact, numerous

- 11 -

hearings followed over the next 13 months to discuss Ortiz's ineffective assistance claim) and instructed Dolz to be present. The court noted that "the best thing to do is to allow Mr. Dolz to answer [Ortiz's ineffective assistance claim], and then the Court will make a determination." Accordingly, Dolz eventually answered Ortiz's claim, filing a written response to Ortiz's sentencing memorandum prior to sentencing. Rivera sought access to Dolz's case files concerning Ortiz's plea negotiations, which both Dolz and the government were ordered to (and presumably did eventually) produce.

On April 21, 2014 a hearing took place, with Dolz present, and Rivera sought to call him to the stand. Dolz responded that he was "not in a position to testify" and that he had a conflict.[8] After listening to the numerous contentions made by the parties concerning how often Dolz visited Ortiz, whether or not Ortiz was seeking to withdraw his guilty plea, and other issues surrounding Ortiz's claim, the district court rescheduled the

---

[8] Dolz specifically stated:

> I am not in a position to testify, to appear. I could argue, I could present evidence, I could find documents, but I am in no condition whatsoever. This is taking time. It is going to take more time. I am still yet under certain jurisdictions. This is not that.
>
> . . .
>
> I am impeded. I have a conflict, if I take the stand.

- 12 -

matter again, this time explicitly "put[ting] the case [down] for a two-day [evidentiary] hearing." Dolz was ordered to be present with counsel.

On May 21, 2014, before the evidentiary hearing scheduled for that date got underway, Rivera filed a supplemental memorandum further detailing Ortiz's ineffective assistance claim. When it was his turn to address the court, Rivera repeatedly stated that Ortiz was not seeking to withdraw his guilty plea, but that he wanted the judge to consider Ortiz's ineffective assistance claim in order to sentence him according to the terms of the original plea offer of 130-147 months. The district court, after listening to arguments from both sides, ultimately ruled that "to the extent that this may be a camouflaged motion to withdraw a plea, the Court denies the request because the timing is not proper. [Ortiz] is not alleging that he's innocent, and to that effect, if it is a motion to withdraw the plea, it is denied." The district court held further that "to the extent that [Ortiz's memorandum on ineffective assistance] is a 2255, it is premature."

At sentencing, held that very same day, Rivera also argued that the district court should sentence Ortiz at the lower end of the applicable Guidelines range because similarly-situated co-defendants had received sentences of nine, ten, or eleven years. Ultimately, the district court declined to rule on the merits of Ortiz's ineffective assistance claim, rejected his sentencing

disparity arguments, and sentenced him in accordance with the plea agreement to a total of 174 months or 14.5 years (near the top of the applicable Guidelines range).

After filing the instant appeal, Ortiz filed a motion to reduce his sentence before the district court pursuant to 18 U.S.C. § 3582(c)(2), which was granted on December 30, 2015, during the pendency of this appeal.

**Analysis**

On appeal, Ortiz primarily argues that the district court erred in: (1) failing to address the merits of his ineffective assistance claim prior to sentencing; and (2) failing to adequately address his sentencing disparity arguments.[9] Because we ultimately remand to the district court to conduct whatever proceedings are necessary to rule on Ortiz's ineffective assistance claim (for reasons discussed in more detail below), we decline to delve into the merits of his sentencing disparity argument at this time.

---

[9] Ortiz also argues that the district court erred in ruling on his motion for a reduction of sentence prematurely. Both parties agree that the district court lacked jurisdiction to rule on the motion while this appeal was pending. See United States v. Cardoza, 790 F.3d 247, 248 (1st Cir. 2015) ("[A] district court does not have jurisdiction to enter a sentence modification order under § 3582(c)(2) while an appeal of that sentence is pending"). We, therefore, vacate the district court's ruling on the sentence reduction and remand this issue "so that the district court, once its jurisdiction has reattached, may consider reducing [Ortiz's] sentence." United States v. Rodríguez-Milián, 820 F.3d 26, 36 (1st Cir.), cert. denied, 137 S. Ct. 138 (2016).

**1. Waiver**

As a threshold matter, we must determine whether Ortiz's claims are barred by the waiver-of-appeals clause found in his plea agreement. Ortiz concedes that he entered into his plea agreement knowingly and voluntarily. However, he argues that the waiver-of-appeals clause should not be enforced because to do so would work a miscarriage of justice in that his plea negotiations were tainted by ineffective assistance of counsel. The government says the waiver-of-appeals clause is enforceable because Ortiz's ineffective assistance claim results in no miscarriage of justice since he "may present his claim through a 2255 motion" and is therefore not prejudiced by the court's finding that his claim was premature.[10]

This court has recognized that "if denying a right of appeal would work a miscarriage of justice, the appellate court, in its sound discretion, may refuse to honor the waiver." United States v. Teeter, 257 F.3d 14, 25 (1st Cir. 2001).

In determining whether a miscarriage of justice would result, we consider, among other factors, "the clarity of the alleged error, its character and gravity, its impact on the defendant, any possible prejudice to the government, and the extent

---

[10] The government also argues that Ortiz's sentencing disparity claim is barred by the waiver-of-appeals clause because he knowingly and voluntarily entered into a valid plea agreement.

to which the defendant acquiesced in the result." United States v. Pratt, 533 F.3d 34, 37 (1st Cir. 2008) (quoting United States v. Cardona-Díaz, 524 F.3d 20, 23 (1st Cir. 2008)). We have noted that the miscarriage-of-justice exception has been applied "sparingly and without undue generosity" and is therefore reserved for egregious circumstances. United States v. De-La-Cruz Castro, 299 F.3d 5, 13 (1st Cir. 2002) (quoting Teeter, 257 F.3d at 26). Nevertheless, in Teeter, we listed, inter alia, certain categories of cases which may fall within the miscarriage-of-justice exception, specifically recognizing "situations in which appellants claim that their sentences were based on constitutionally impermissible factors (say, race or ethnicity) . . . or that the plea proceedings were tainted by ineffective assistance of counsel." Teeter, 257 F.3d at 25 n.9 (internal citations omitted).

Applying those principles, we first note the unique posture of Ortiz's argument: Ortiz is not alleging that the attorney who negotiated the plea deal that Ortiz actually entered into (Rivera) provided ineffective assistance, but that his prior attorney (Dolz) was ineffective in adequately communicating with him regarding plea negotiations. That below-par performance, says Ortiz, cost him a better plea deal because it was off the table by the time his new counsel took over his case. Ortiz, in several pro se filings and through memoranda filed by his second attorney,

- 16 -

attempted to have the district court consider the detrimental impact of his first attorney's alleged deficient performance on the posture of his plea negotiations and resolve the ineffective assistance claim prior to sentencing. However, the district court refused to rule on his claim, finding it premature. Because it is clear that the district court seemingly misunderstood its authority to promptly decide Ortiz's Sixth Amendment claim that is, at least on its face, plausible because Ortiz raised his complaint about counsel's inadequate attention before signing the plea agreement, and because the terms of the plea agreement are themselves arguably a product of a Sixth Amendment violation, we believe that Ortiz's waiver falls into that narrow category of cases we described in Teeter where enforcement would work a miscarriage of justice. Therefore, we exercise our discretion not to enforce the waiver here. See United States v. Del Valle-Cruz, 785 F.3d 48, 57 (1st Cir. 2015) (refusing to enforce a waiver where the error was of a "constitutional dimension"). We proceed to the merits of Ortiz's appeal.

### 2. Ineffective Assistance

It is well-established that a defendant is entitled to the Sixth Amendment right to effective assistance of counsel during plea negotiations. United States v. Márquez-Pérez, 835 F.3d 153, 165 (1st Cir. 2016). And "[w]e assess a claim of ineffectiveness in plea negotiations under the two-part test of Strickland v.

Washington, 466 U.S. 668 (1984), under which a defendant must show deficient performance and prejudice." Id. Deficient performance is measured against an "objective standard of reasonableness" and "[p]rejudice exists if there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. (quoting Strickland, 466 U.S. at 688).

"When we receive ineffective assistance of counsel claims on direct appeal, we have three options:" (1), and most commonly, we can decline to hear such claims, allowing the appellant to raise the claim before the district court by means of a 28 U.S.C. § 2255 collateral attack; (2) in more rare instances we can rule on the merits of the claim on direct appeal where the facts are sufficiently developed; or (3) where "the record [] is not developed enough to decide the ineffective assistance of counsel claim on the merits, yet it does contain sufficient indicia of ineffectiveness in the plea agreements, the PSR, and the transcripts of the change of plea and sentencing hearings," we may remand the case for proceedings on the ineffective assistance claim without requiring the defendant to bring a separate collateral attack. United States v. Colón-Torres, 382 F.3d 76, 84-85 (1st Cir. 2004).

And while we have not previously ruled on the precise issue presented here (whether a district court should rule on an

ineffective assistance claim prior to sentencing and if so, under what circumstances), as noted by Ortiz, we have indicated in the context of claims involving attorney-client disputes that "[w]here the accused voices objections to appointed counsel, the trial court should inquire into the reasons for the dissatisfaction." United States v. Prochilo, 187 F.3d 221, 229 (1st Cir. 1999) (quoting United States v. Allen, 789 F.2d 90, 92 (1st Cir. 1986)). The failure to conduct such an inquiry constitutes an abuse of discretion. Id. at 229 ("In the case at bar the trial court, in an abuse of its discretion, denied the motions for continuance and for reconsideration without making inquiry into the accused's concerns . . . . Because no inquiry was made, this court has no basis in the record for sustaining the trial court's rulings. Accordingly, we are constrained by the Sixth Amendment to direct that Prochilo's conviction be set aside and that this case be remanded to the district court for further proceedings.").

We have similarly held, within the context of alleged conflict of interest situations, "that the district court must inquire into each instance of joint representation of multiple defendants, and must advise each defendant of his right to separate counsel." United States v. Coneo-Guerrero, 148 F.3d 44, 47 (1st Cir. 1998). We therefore require trial courts to "inquire diligently whether [defendants] have discussed the risks with their attorney, and whether they understand that they may retain

separate counsel, or if qualified, may have such counsel appointed by the court and paid for by the government." United States v. Foster, 469 F.2d 1, 5 (1st Cir. 1972); see also United States v. Cardona-Vicenty, 842 F.3d 766, 772 (1st Cir. 2016), cert. denied, 137 S. Ct. 1238 (2017) ("[G]iven the 'ubiquitous and insidious' risks of multiple representation, the Sixth Amendment imposes a duty on trial courts to investigate a defendant's timely objections to joint representation and to inquire into the propriety of multiple representation whenever the trial court 'knows or reasonably should know that a particular conflict exists.'" (quoting United States v. Hernandez-Lebron, 23 F.3d 600, 603-04 (1st Cir. 1994))). Accordingly, the importance of a district court's inquiry into attorney-client disputes and conflicts of interest is well established.

Two of our sister circuits have ruled on the precise issue presented here. See United States v. Steele, 733 F.3d 894, 897 (9th Cir. 2013); United States v. Brown, 623 F.3d 104, 112-14 (2d Cir. 2010). In Brown, the Second Circuit held that the district court should have ruled on an ineffective assistance claim prior to sentencing where the defendant's first counsel (who had been accused of ineffective assistance) had already been relieved and the defendant was asserting that his previous counsel failed to inform him of a 20-year plea offer. 623 F.3d at 112-14 ("As a matter of first impression, we hold that when a claim of

- 20 -

ineffective assistance of counsel is first raised in the district court prior to the judgment of conviction, the district court may, and at times should, consider the claim at that point in the proceeding" and there was "no good reason to postpone inquiry into the merits of [the defendant's] claim.").

The Second Circuit recognized that while the appellate court typically does not hear ineffective assistance claims on direct appeal (unless the record is sufficiently developed), a trial court need not invoke the "appellate court's rubric and require a defendant to use his one § 2255 motion to raise an ineffective assistance claim post-judgment, particularly when the district court is in a position to take evidence, if required, and to decide the issue pre-judgment."  Id. at 113.

The Ninth Circuit has since adopted the Second Circuit's holding, "adopt[ing] the rule in Brown that 'when a claim of ineffective assistance of counsel is first raised in the district court prior to the judgment of conviction, the district court may, and at times should, consider the claim at that point in the proceeding.'"  Steele, 733 F.3d at 897 (quoting Brown, 623 F.3d at 113) ("Though district courts have heard prejudgment ineffective assistance of counsel claims on occasion, see, e.g., United States v. Del Muro, 87 F.3d 1078, 1080 (9th Cir. 1996), we have not previously articulated the standard a district court should apply to decide whether to rule on such a claim.  We agree with the

Second Circuit's decision in United States v. Brown, that a district court need not 'invoke an appellate court's rubric and require a defendant to use his one § 2255 motion to raise an ineffective assistance claim post judgment, particularly when the district court is in a position to take evidence, if required, and to decide the issue prejudgment.'" (quoting Brown, 623 F.3d at 113)). Nevertheless, in Steele, the Ninth Circuit affirmed the district court's decision to reserve ruling on a defendant's ineffective assistance claim until after the initiation of collateral proceedings because of "the lack of a significant record necessary to adequately consider [the defendant's] broad-based motion" and the court's consideration of "delaying the trial proceedings to conduct an immediate hearing on an under-developed motion." Steele, 733 F.3d at 899.

We agree with our sister circuits and similarly hold that "when a claim of ineffective assistance of counsel is first raised in the district court prior to the judgment of conviction, the district court may, and at times should, consider the claim at that point in the proceeding." Brown, 623 F.3d at 113. And the court's failure to do so may constitute an abuse of discretion. See id. at 112 ("The government argues unconvincingly that given the Supreme Court's and this Court's general aversion to deciding ineffective assistance claims on direct review, 'the district court's refusal to entertain [the defendant's] motion before he

- 22 -

was sentenced cannot be deemed an abuse of discretion.' We disagree.").

As noted by the Second Circuit, "[w]e are mindful that district courts face competing considerations in deciding whether it is appropriate to inquire into the merits of such claims prior to judgment, including principally the potential disruption of the proceedings, especially if the attorney against whom the complaint is directed continues at the time to represent the defendant." Id. at 113. We similarly observe that "[t]he decision to interrupt the pre-judgment proceedings to inquire into the merits of an ineffective assistance of counsel claim may depend on, among other things, whether the court would need to relieve the defendant's attorney, or in any event, to appoint new counsel in order to properly adjudicate the merits of the claim." Id. The court may also take into consideration whether the defendant's "claim [is] broad-based and the evidentiary record to consider it [is] sorely lacking," as well as "whether the interests of justice and judicial economy would be served by delaying the trial proceedings to conduct an immediate hearing on an under-developed motion." Steele, 733 F.3d 898-99.

Having outlined the proper standards applicable, we now turn to the particular facts of Ortiz's case. Ortiz argues that his first counsel was ineffective in failing to timely communicate that his counteroffer had been rejected, that the original plea

- 23 -

offer had expired, and by failing to adequately communicate concerning plea negotiations whatsoever after Ortiz made an initial counteroffer.

As we detailed earlier, Ortiz raised his concerns at multiple points in the proceeding, providing the district court with several opportunities to address Ortiz's ineffective assistance claim. Based upon the facts of this case, we conclude that the district court had "no good reason to postpone inquiry into the merits of [Ortiz's] claim" and thus abused its discretion in doing so. Brown, 623 F.3d at 113.

Like Brown, the only proceeding that would have been postponed or interrupted by an inquiry into the alleged ineffectiveness during plea negotiations would have been sentencing and the attorney against whom the complaint was directed (Dolz) had already been relieved of his duties since July 2012. Furthermore, the court had already scheduled and heard detailed arguments on the issue, rescheduling several sentencing hearings as needed. Additionally, unlike Steele, the record was significantly developed by the time of sentencing, especially since the district court had heard from both sides and had required both Dolz and the government to turn over their case files detailing the facts surrounding plea negotiations.[11] Consequently,

_____

[11] We note that when Rivera attempted to call Dolz as a witness during one of the hearings, Dolz refused to take the stand,

the district court was well-positioned to decide the merits of Ortiz's claim without a sacrifice to judicial economy.

In addition to these procedural considerations, there were also several factors indicating the facial plausibility of Ortiz's ineffective assistance claim including: the parties' dispute regarding how often Dolz communicated with Ortiz and the nature of those communications; the lack of clarity around when the original 130-147 month offer expired; Ortiz's consistent statements that he always desired to accept a plea and was only in search of the best deal; and Ortiz's assertion that Dolz never fully explained the nature of the offenses lodged against him during the course of negotiations.[12]

As the Supreme Court has noted, the "plea-bargaining process is often in flux, with no clear standards or timelines and with no judicial supervision of the discussions between prosecution and defense." Missouri v. Frye, 566 U.S. 133, 143 (2012). Yet, "[n]inety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas." Id. With such wide-sweeping impact despite the existence

---

claiming he had a conflict, presumably with Ortiz. We are puzzled as to how such a conflict would excuse him from testifying in this circumstance.

[12] We also note that the record indicates that Dolz was ill at some point during his representation of Ortiz and was "out of commission" for at least ninety days.

of ambiguity around the standards to be maintained in the plea-bargaining process, it may be imperative for a district court, at times, to rule on a claim of ineffective assistance prior to the defendant seeking post-conviction relief. Such is true here. If Dolz were found to have provided ineffective assistance in his failure to communicate with Ortiz during plea negotiations, the district court would be required to place Ortiz in the position he would have been had Dolz been effective. See Brown, 623 F.3d at 114 ("[I]f counsel is determined to have been ineffective, equities require that the defendant be put in the same place he would have been but for counsel's ineffective assistance."). In other words, if the district court had determined that counsel's ineffectiveness caused Ortiz to be unaware of a plea offer that he would have accepted had he a chance to do so, then the district court should have given Ortiz that chance. On the other hand, if the court had determined that Dolz was not ineffective (as a reminder, to establish ineffective assistance Ortiz must demonstrate both deficient performance and that he was prejudiced by that performance), then Ortiz would have been stuck with the plea agreement he actually entered into.

## Conclusion

Having determined that the district court abused its discretion in failing to rule on the merits of Ortiz's ineffective assistance claim prior to sentencing, we remand for further

proceedings consistent with this decision and retain jurisdiction over any remaining claims.[13]

---

[13] Because we remand for further proceedings, we need not decide now Ortiz's sentencing disparity claim. <u>See</u> <u>United States v. González-Vélez</u>, 466 F.3d 27, 38 (1st Cir. 2006) (declining to rule on the merits of an appellant's other sentencing claims after remanding on the basis of one of his claims).